MILES D. SCULLY  (SBN: 135853)
  Email:  mscully@gordonrees.com
TARA L. MARTIN  (SBN: 189168)
  Email:  tmartin@gordonrees.com
GORDON & REES LLP
2211 Michelson Drive, Suite 400
Irvine, CA 92612
Telephone:  (949) 255-6950
Facsimile:  (949) 474-2060

Attorneys for Nonparty
URBAN OUTFITTERS, INC.,
a Pennsylvania corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNICOLORS, INC., a California Corporation,<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>MACY'S, INC., individually and doing business as "MACYS.COM" and "BLOOMINGDALE'S, a Delaware Corporation, et al.<br><br>　　　　　　　　Defendant. | CASE NO.  14-CV-08611 RGK (SSx)<br><br>Judge:  R. Gary Klausner<br>Courtroom 850<br><br>**NONPARTY URBAN OUTFITTERS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO INTERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24**<br><br>[Filed Concurrently With Declaration of Tara L. Martin]<br><br>Date: December 29, 2014<br>Time: 9:00 a.m.<br>Ctrm: 850 |

　　　Plaintiff's opposition is tall on contrived indignation and short on substance. Unable to challenge Urban's motion on the merits, Plaintiff resorts to unfounded accusations of subterfuge and deceit in order to bolster its claim that "equitable considerations mandate that this action proceed without Urban." Unwilling to acknowledge (much less dispute) Urban's interest in protecting its substantial financial stake in this action, Plaintiff instead recycles hackneyed arguments which have no relevance to this motion.

### A. Urban Was Unable and Under No Obligation to Identify Plaintiff's Intended Doe Defendants In Either Urban's Initial Disclosure or Its Notice of Interested Parties.

Urban is a major retail brand that sells millions of garments to hundreds of clothing retailers and consumers each year. Plaintiff's allegation that Urban had ready access in 2014 to the names of each of the downstream retailers that purchased the allegedly-infringing garment ("Accused Product") during the brief period of its sale (from March to December 2011), is manifestly untrue and without evidentiary support. The identification and retrieval of the relevant portions of invoices more than three years after the sales took place required significant time and effort, which Urban had no obligation nor ability to undertake prior to filing its Initial Disclosure. See, Fed. R. Civ. Proc. 26(d) (A party must make its initial disclosures based on the information then reasonably available to it); Notes of Advisory Committee on 1993 Amendments (Rule 26 "does not demand an exhaustive investigation" at the outset of a case).

Plaintiff is likewise wrong in its assertion that Urban's affirmative defenses somehow required Urban to clairvoyantly identify of each of Plaintiff's intended Doe Defendants. The Rule 26 initial "disclosure obligation is limited to material that the disclosing party may use, it is no[t] … tied to particularized allegations in the pleadings." Fed. R. Civ. Proc. 26, Notes of Advisory Committee on 2000 Amendments; see also, *Harris v. Advance Am. Cash Advance Ctrs.*, 288 F.R.D. 170, 171 (S.D. Ohio 2012) (held that since the purpose of the initial disclosure is to alert the opponent to the existence of a witness whose testimony may be helpful to the disclosing party, the defendant's failure to identify individuals named by plaintiff did not violate initial disclosure obligations).

Furthermore, Rule 26(a) only requires a party to provide to the other parties the name, and if known, the address and telephone number of each *individual* likely to have discoverable information; it does not extend to the identification of

Gordon & Rees LLP
2211 Michelson Drive Suite 400
Irvine, CA 92612

corporate entities or corporate witnesses.  Fed. R. Civ. Proc. 26(a); *Moore v. Computer Assocs. Int'l*, 653 F. Supp. 2d 955, 959 (D. Ariz. 2009).

With respect to the Notice of Interested Parties, the purpose of Local Rule 7.1-1 is to "enable the Court to evaluate possible disqualification or recusal." *Ibid.* The related disclosure statement required under Rule 7.1 of the F.R.C.P requires the identification of all persons and entities which have a *direct* pecuniary interest in the outcome of the case. *Ibid.* Plaintiff asserts that Urban is vicariously liable for **all** of the infringing conduct alleged in the *Unicolors I* complaint. Plaintiff should be equitably estopped to now argue that each of the 65 defendants in this case had a direct pecuniary interest in *Unicolors I* such that Urban was required to disclose the names of those entities at the outset of that litigation. Moreover, in light of the aforementioned disclosure obligations under Rule 26(a), it can hardly be suggested that Local Rule 7.1-1 required Urban to determine the identities of individuals and/or entities that Plaintiff might later name as Doe Defendants which, for all Urban knew, included foreign entities involved in the production and/or manufacture of the Accused Product, which entities have also been identified by Urban in discovery but not pursued by Plaintiff in this action.

A search on the Pacer website reveals that Plaintiff's counsel has filed approximately 690 copyright infringement cases over the past 10 years. Plaintiff's professed shock at the revelation that Century 21 was not the only downstream retailer of a garment distributed by Urban is far from credible. On the other hand, if Plaintiff was truly concerned that none of these downstream retailers were identified in Urban's Initial Disclosure or Notice of Interested Parties, its learned counsel would have surely challenged the sufficiency of these filings at or around the time they were submitted. No such challenge was ever raised and, as set forth in greater detail below, Plaintiff requested (and obtained) the identities of each of the downstream retailers during discovery in *Unicolors I* months before the discovery cutoff date.

B. **The Contention that Urban Failed to Provide an Accounting of All Units Sold in Its First Document Production is Without Merit.**

Plaintiff served interrogatories (its first set of discovery) on Urban on April 29, 2014. Interrogatory No. 8 asked Urban to:

> Detail YOUR sale(s) of SUBJECT PRODUCT, indicating the dates on which YOU sold the SUBJECT PRODUCT, the amount of SUBJECT PRODUCT YOU sold, and IDENTIFY all PERSON(s) to which YOU sold SUBJECT PRODUCT.

After asserting its objections, Urban responded that it "will produce electronic business communications setting forth the information which it believes to be responsive to this interrogatory pursuant to Federal Rules of Civil Procedure Rule 33(d)." (Dkt. No. 49–7, at pp. 13:14–14:13.) Thereafter, the parties acknowledge the confidential nature of these documents (as well as the confidential nature of Plaintiff's business records), and agreed that such documents could only be produced after the entry of a mutually-agreeable protective order. (Declaration of Tara L. Martin ["Martin Decl."], at ¶ 2.)

On July 29, 2014, Plaintiff filed the parties' proposed stipulated protective order ("SPO"). (Dkt. No. 21, *Unicolors* I, Martin Decl., ¶ 3, Exh. A.) Before the Court even had an opportunity to enter the SPO on August 1, 2014 (Dkt. No. 24, *Unicolors I*, Exh. B to Martin Decl.), Urban (in good faith based upon the mere filing of the SPO), produced to Plaintiff 484 separate documents on July 31, 2014,[1] which included the invoices it had issued to the downstream retailers. (Martin Decl., at ¶ 4.) These invoices identified 45 of the defendants named in the instant case, including Nordstrom, Macy's, Loehmanns, Bloomingdales, and Saks Fifth Avenue, which collectively purchased the vast majority of units of the Accused

---

[1] For its part, Unicolors, waited until August 13, 2014 before producing any documents in the *Unicolors I* case. (Martin Decl., at ¶ 5.)

Gordon & Rees LLP
2211 Michelson Drive Suite 400
Irvine, CA 92612

1  Product.² (Martin Decl., at ¶ 4.)

2  It was only because Urban had previously disclosed the total number of units it had purchased in response to Plaintiff's Interrogatory No. 4, that Plaintiff and Urban were able to determine that Urban's first document production inadvertently excluded some of the invoices which related to sales of *other* colorways *not* identified in the complaint. (Dkt. No. 49–7, at pp. 9:13–10:15 ["Responding Party purchased approximately 10,343 units of the SUBJECT PRODUCT…"], Martin Decl., at ¶ 6.)

In light of Urban's disclosure in response to Interrogatory No. 4 regarding the total purchase of 10,343 units of the Accused Product, Plaintiff's argument that Urban was trying to conceal information is demonstrably false. Upon discovering the discrepancy between the total number of units sold, as identified in its response to Interrogatory No. 4 and in comparison with the total number of units reflected in the invoices, Urban realized that some invoices for the Accused Product (which related to *other* colorways *not* identified in the complaint) had not been gathered by Urban or included in the initial production. Urban thereafter produced a second set of documents on September 2, 2014, which included the invoices that had not been included in the initial production. (Martin Decl., at ¶ 7; Dkt. No. 49, p. 20:16–23.)

Plaintiff's repeated argument based upon "total units sold" is a red herring. The only issue related to the production of invoices was the *identification* of Urban's downstream retailers, which, as of September 2, 2014, was complete.³ (Martin Decl., at ¶ 8.) **Unicolors has no explanation for its failure to seek a stipulation or leave to amend the complaint in the *Unicolors I* action to name**

---

² Urban acknowledges that it erroneously stated, in the Motion to Intervene, that it had identified all 65 downstream retailers in its first document production.

³ None of the allegations in the complaint herein have anything to do with number of units sold. Each downstream retailer is identified as an alleged infringer, whether it purchased 2 units of the Accused Product or 200. (Dkt. No. 1.)

**the 45 downstream retailers that were disclosed on August 1, 2014.** Plaintiff could have easily done so, as it represented that it would "promptly" do in the Parties' Joint Report.[4] The same is true with regard to the balance of the downstream retailers that were identified in Urban's September 2, 2014 document production. As of that date, Plaintiff still had 12 weeks (until November 24, 2014) to conduct discovery on these parties. In the event Plaintiff deemed this period to be insufficient, it could have sought a stipulation or leave of court to modify the scheduling order to allow more time for discovery, and/or to continue the trial date. It is undisputed that Plaintiff took no such action, and it offers no excuse for its failure to do so.

### C. Plaintiff's Inappropriate Remarks About The Parties' Failure to Settle at Mediation Are False and Irrelevant.

Plaintiff's assertion that Urban forced Plaintiff to file this lawsuit by refusing to settle the claims of the 65 downstream retailer defendants at mediation in *Unicolors I* is inappropriate, irrelevant, and untrue. At the parties' September 11, 2014 mediation, Plaintiff's counsel presented to the mediator and counsel for Urban, a spreadsheet estimating the downstream profits of each of the 65 downstream retailers. Based on these figures, Plaintiff proposed a global settlement that included the profits of the third party downstream retailers. In responding to the settlement demand, Urban's counsel informed the mediator that because Plaintiff had failed to amend the complaint to name the downstream retailers as defendants, and had further failed to conduct any third party discovery, there was no admissible evidence to support a settlement demand that included the downstream retailers' respective profits from the sale of the Accused Product.

---

[4] "Should discovery reveal that any other offending fabric and/or garments related to the infringements at issue in this case were … sold by other parties within the jurisdiction of this Court, Plaintiff will **promptly seek to amend the Complaint to add said parties**." (Dkt. No. 17, *Unicolors I*, at p. 3:14–18 [emphasis added], attached as Exh. C. to the Martin Decl.)

(Martin Decl., at ¶ 9.) Had Urban's counsel engaged in gamesmanship or subterfuge as suggested by Plaintiff, the failure of Plaintiff and/or its counsel to properly engage in such discovery would never have been discussed or even mentioned by Urban's counsel at that time. This is especially apparent considering that, at the time of the mediation, Plaintiff still had eleven (11) weeks to conduct third party discovery on the downstream retailers and/or to seek a stipulation or leave of court to amend the complaint to name these parties as defendants in the *Unicolors I* case. (Martin Decl., at ¶ 10.) It is undisputed that, in response to Urban's counsel's comments, Plaintiff took no action to rectify its failure to adequately litigate the *Unicolors I* claims, and instead waited approximately eight (8) weeks and then filed the complaint in this matter.

### D. Judge Otero's Schedule of Pretrial Dates Did Not Preclude Unicolors from Seeking To Amend Its Complaint.

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, a party may amend its pleading (after the initial deadline to do so as a matter of course) with the opposing party's written consent or the court's leave. *Id.*, at subpart (a)(2). The policy of freely granting leave to amend under this provision is "to be applied with **extreme liberality**." *United States v. $11,500.00 in United States Currency*, 710 F.3d 1006, 1013 (9th Cir. 2013) (emphasis added) [quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)]. Notwithstanding the Ninth Circuit's "extremely liberal" policy of granting leave to amend, Plaintiff suggests that such a request would have been an affront to the Court "in the face of Judge Otero's scheduling order, which sets firm dates and is to be respected by the parties." Since "discovery reveal[ed] … that other offending … garments related to the infringements at issue in [*Unicolors I*] were … sold by other parties within the jurisdiction of this Court," and in light of Plaintiff's stated commitment, under such circumstances, to "promptly seek to amend the Complaint to add said

parties,"[5] there is no reason why Plaintiff's request for a stipulation or leave of court to amend its complaint would have been denied, nor any excuse for Plaintiff's failure to – at the very least – request such stipulation or leave to amend.

For reasons unknown to Urban, Plaintiff never sought a stipulation or leave to amend its complaint. (Martin Decl., at ¶ 11.) Usurping the role of the Court, Plaintiff's counsel contends that "[f]iling the instant action was Unicolors' only reasonable option to pursue its claims against the [downstream retailers]." Yet Plaintiff fails to explain how Urban or Judge Otero is responsible for Plaintiff's failure to seek to amend its complaint in accordance with the Federal Rules of Civil Procedure.

### E. Even if Judge Otero Had Refused to Consolidate the Cases, Such Ruling Would Be Irrelevant to the Instant Motion.

In addition to the name calling and unfounded accusations of subterfuge, Plaintiff asks this Court to deny Urban's Motion to Intervene based on the fallacious reasoning that, because Judge Otero declined to "consolidate" the cases, "the claims in each case are different, and Urban's allegation of an interest in this case fails." Plaintiff provides no legal support for the strange proposition that a Court's refusal to deem cases related somehow amounts to a ruling on a motion to consolidate under Rule 42, or that any such ruling is somehow dispositive as to the merits of a Motion to Intervene under Rule 24. Even if such authority had existed, Plaintiff never moved to consolidate the cases under Rule 42; it merely filed a form Notice of Related Cases under General Order 14–03. The issue was never briefed, argued, nor adjudicated as it would have been had Plaintiff moved the court for an order to consolidate the cases.

Twenty-eight days after representing to the Court, in its Notice to Relate the Cases, that the two cases involved the same claims and involved common questions of fact regarding the network of infringement, Plaintiff reverses its

---

[5] (Dkt. No. 17, *Unicolors I*, at p. 3:14–18.)

position, contradicts itself, and argues that the cases involve different parties, claims, and requests for relief (per Judge Otero's denial), and that Urban therefore has no protectable interest in this case. Neither logic nor the law supports Plaintiff's arguments.

### F. Plaintiff's Assertion that Judge Otero's Denial is "Terminal Regarding Unicolors' Supposed Claim Splitting" is Wrong.

Although irrelevant to the merits of Urban's Motion to Intervene, Plaintiff attempts to use Judge Otero's declination to relate the cases as a binding determination that Urban may not intervene in the instant case or bring its Motion to Dismiss for claim splitting. Plaintiff's assertion that a court's refusal to consolidate two cases has a "res judicata" effect on a subsequent motion to dismiss for claim splitting is without merit. Just like Plaintiff, the plaintiffs in *Murphy v. Wells Fargo Home Mortg.*, 2013 U.S. Dist. LEXIS 118410 (N.D. Cal. Aug. 19, 2013) relied on *Delew v. Wagner*[6] and *RA Med. Sys. Inc. v. PhotoMedex, Inc.*[7] for the proposition that "Judge Fogel's refusal to relate the *Murphy* Action to the underlying action precludes application of the claim splitting bar." *Murphy v. Wells Fargo Home Mortg., supra*, at p. 22. Noting that "these cases do not so hold," the *Murphy* court rejected the plaintiff's argument and dismissed the duplicative action without leave to amend. *Id.* at pp. 22, 26. The Court further stated:

> Judge Fogel's refusal to relate the cases … did not grant plaintiffs license to file otherwise duplicative lawsuits. A judicial decision not to relate or even consolidate two similar actions does not automatically sanction an otherwise improper splitting of claims. In fact, a district judge may very well relate or consolidate two actions and subsequently dismiss the later-filed action as barred by the doctrine against claim splitting if it turns out to be duplicative of the first action. The cases cited by plaintiffs compel no different result.

---

[6] 143 F.3d 1219 (9th Cir. 1998).
[7] 373 Fed. Appx. 784 (9th Cir. 2010).

*Wells Fargo Home Mortg., supra*, at pp. 21–22.

Just as Judge Otero's declination to relate the cases is irrelevant to any would-be ruling on a hypothetical motion to consolidate the cases, it is irrelevant Urban's Motion to Intervene and irrelevant to Urban's Motion to Dismiss for Claim Splitting.

### G. Unable to Oppose Urban's Motion on the Merits, Plaintiff Recites Boilerplate Rules of Law With No Factual Analysis.

Plaintiff's circular arguments fail to address the merits of Urban's motion, i.e., that Urban has a large financial stake in this case which only Urban can protect. Plaintiff does not dispute that the allegations in both cases assert that Urban sold the Accused Product to each of the downstream defendants, and that based on this undisputed fact, Plaintiff alleges that Urban is directly liable for its own infringement, and vicariously liable for the derivative infringement of the downstream retailers.

Urban contends that it has a clear interest in this litigation because it is the only defendant alleged to have *directly* infringed on the Accused Product, and because of its exposure for damages that may be awarded against the downstream retailers herein. Plaintiff responds by recycling the argument related to Judge Otero's refusal to relate the cases in a confusing (and inaccurate) assertion that Urban's only claimed interest in this case is "defending itself against 'the exact same claims' as in the Free People [*Unicolors I*] case." (Dkt. No. 49, p. 14:7–12.) Whereas Urban argues that its ability to protect itself from any vicarious liability that might otherwise result from an adverse judgment against the downstream retailers will be compromised unless Urban is allowed to intervene, Plaintiff responds with an unrelated discussion about the time within which Urban has had to prove its defenses in *Unicolors I*, and the different stages of the two cases. (*Id.*, at pp. 14:22–15:23.) Similarly, whereas Urban argues that the downstream retailers do not adequately represent Urban's interest because they have no

1 | knowledge of the facts or circumstances surrounding Urban's acquisition or use of
2 | the design that it created and incorporated into the Accused Product, Plaintiff
3 | responds with boilerplate rules of law, conclusory statements that Urban fails to
4 | make the requisite showing on the inadequacy of representation, and inexplicably
5 | asserts that "Urban's interests potentially affected in this action have already been
6 | adequately represented in the Free People (*Unicolors I*) case." (*Id.*, at pp. 15:24–
7 | 16:24.) Finally, Plaintiff fails altogether to respond to Urban's assertion that
8 | Urban has claims and defenses which share common questions of law and fact with
9 | this litigation.

For all the forgoing reasons, Urban respectfully requests that this Court grant its Motion to Intervene and set a date for the hearing on Urban's Motion to Dismiss, attached as Exhibit A to the initial Declaration of Tara Martin. (Dkt. No. 25–1.)

Dated: December 15, 2014

GORDON & REES LLP

By: */s/ Tara L. Martin*
Miles D. Scully
Tara L. Martin
Attorneys for Nonparty URBAN OUTFITTERS, INC., a Pennsylvania corporation